## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| RIVER VALLEY PRODUCTION, LLC )<br>d/b/a/ RIVER VALLEY RELIEF  )<br>CULTIVATION )<br>          )<br>       Plaintiff,   )<br>          )<br>v.        )<br>          )<br>OBSIDIAN INSURANCE COMPANY )<br>          )<br>       Defendant.   ) | Case No. 2:23-cv-02032-PKH |

## COMPLAINT

Comes now the Plaintiff, River Valley Relief Production, LLC d/b/a River Valley Relief Cultivation, by and through its attorneys, Smith, Cohen & Horan, PLC, by Matthew T. Horan, and for its Complaint against the Defendant Obsidian Insurance Company, states:

1. Plaintiff River Valley Relief Production, LLC d/b/a River Valley Relief Cultivation ("River Valley") is an Arkansas corporate entity headquartered in Fort Smith, Arkansas.

2. Defendant Obsidian Insurance Company ("Obsidian") is an insurance company headquartered in the State of New York, and is incorporated in another state, believed to be Delaware, but not in the State of Arkansas.

## ACTION

3. This is an action to recover $300,000.00, and other damages and expenses, under the terms of Defendant Obsidian Insurance Company's Policy No. ERB-CP-

000001232-00, issued September 23, 2021, and effective to September 23, 2022, at 12:01 a.m. A copy of said policy is attached to this Complaint as Exhibit "A."

4.  The action concerns damages to growing medical marijuana plants owned by Plaintiff River Valley that occurred on or about November 26, 2021. That date falls within the term of the attached policy (Exhibit "A").

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction of this civil action between citizens of different states, where the amount in controversy exceeds $75,000.00. *See*, 28 U.S.C. § 1332. Venue is proper in this District and Division based on Plaintiff's residence in Fort Smith, Arkansas, where its medical marijuana cultivation facility is located, and where the events giving rise to the claim occurred.

## FACTS

6.  Storm Nolan is a citizen of Arkansas, and the Chief Executive Officer of Plaintiff River Valley. In July 2020, the Arkansas Medical Marijuana Commission awarded Storm Nolan a medical marijuana cultivation license. State law requires that the operator under a cultivation license be an entity incorporated in Arkansas. Plaintiff River Valley Production, LLC d/b/a River Valley Relief Cultivation, is the named insured and is the entity that operates the cultivation facility, and is the owner of growing medical marijuana plants cultivated in the facility. The facility is located at 5601 Old Greenwood Road in Fort Smith, Arkansas. The facility building and contents were insured against losses and damages under the policy attached to this Complaint as Exhibit "A."

7.  Between July 2020, and August 2021, the cultivation facility was under planning and construction. By August 2021, the facility had advanced to a point where the

operating entity could enter and use the facility. Shortly thereafter, the first marijuana plants began growing in the facility.

8. On or about September 26, 2021, the general contractor's work on the facility was substantially completed; the contractor's builder's risk policy terminated in consequence. Being advised of the imminent completion of construction, Plaintiff purchased a policy of property and liability insurance from Defendant, doing so on September 23, 2021. It was fully paid-for and in effect on November 25-26, 2021, when 5,097 growing plants owned and being grown by Plaintiff were directly and physically damaged.

9. To purchase the policy issued by Defendant Obsidian, Plaintiff paid a premium of $22,959.00, plus fees of $1,800.00, and taxes of $990.36. This payment obtained insurance coverage for the plants that were being grown. The base Coverage for the Building and Personal Property is coverage that is found as part of Exhibit "A," specifically on Form AVSH 20 01 01 21. The policy also contains a coverage extension specifically for Cannabis Personal Property, being plants that are being grown, along with those that have been harvested. That extension is found as part of Exhibit "A," on Form AVSH 20 03 01 21. Growing cannabis plants are Covered Property for purposes of Form AVSH 20 01 01 21, the base coverage.

10. The insuring clause under the Business and Personal Property base coverage endorsement declares:

> "We will pay for direct physical loss of or damage to Covered
> Property at the premises described in the Declarations caused by or

resulting from any Covered Cause of Loss." (Exhibit "A," Form AVSH 20 01 01 21, p. 1 of 16.)

11. Under the Cannabis Personal Property Extension AVSH 20 03 02 21, if there is a loss to cannabis plants, different agreed amounts are to be paid by the insurer, where there is a physical loss or damages to them. The indemnity to be paid is one apportioned to their varying Developmental Stages. Defendant Obsidian's policy extension designated the pertinent developmental stages to be (a) Pre-Vegetative Plants, (b) Vegetative Plants, (c) Pre-Flowering Plants, and (d) Flowering Plants. (There is also coverage for Harvested Plants, but no losses were experienced on November 26, 2021, with respect to them.)

12. The day before the loss, November 25, 2021, Plaintiff had a total of 5,097 plants under cultivation, of which 0 were pre-vegetative, 41 vegetative, 2,914 pre-flowering, and 2,142 flowering plants. These were destroyed when four chillers serving the facility shut down, due to the negligence of a third-party vendor and installer. According to values established in the Endorsement, this would represent an agreed value loss of $511,735.00, subject to a $50,000.00 deductible. The Limit of Insurance offered is $300,000.00, and a demand is hereby made for $300,000.00.

13. The aforesaid chillers temporarily shut down starting approximately 9:00 p.m. on the evening of November 25, 2021, and remained off until after the shutdown was discovered around 7:00-7:30 a.m. on November 26, 2021. Thereafter, the problem was fixed, and the chillers started up again. The chillers did not turn back on until later in the day when the equipment vendor and installer, Harrison Energy Partners, was able to address the cause of the shutdown.

14. The chillers serving the growing rooms at River Valley's cultivation facility, located at 5601 Old Greenwood Road, Fort Smith, Arkansas, automatically shut down, just as they had been programmed to do by the vendor (Harrison Energy Partners), the mechanical contractor (R Squared Plumbing and Drain Service, Inc.), and the installers (Crawford Construction Co. and Harrison Energy Partners, LLC) (manufacturer Dalkin). The installer programmed the chillers to shut down when outside temperatures reached 40° Fahrenheit, instead of 0°, and/or failed to disable the shutdown function which was not needed at the facility.

15. The shutdown did not injure or damage any of the chillers themselves: the entire system would have switched back on, once the outdoor ambient temperature reached or exceeded 40° Fahrenheit. When the chillers temporarily shut down, the electric grow lamps remained on. The operating lamps killed the plants in the growing room. The loss was communicated to the insurer on November 26, 2021.

16. Later, or about the 22nd day of August, 2022, Plaintiff's CEO, Storm Nolan, directed a communication to the agent for Defendant Obsidian Specialty Insurance Company, claiming damages for the losses that River Valley Relief, LLC had sustained. A copy of this communication is attached as Exhibit "B."

17. On the 8th day of November, 2022, Defendant Obsidian Insurance Company, through its appointed third-party administrator, Avant Specialty Claims (a division of Specialty Program Group, LLC, of Brentwood, Tennessee), delivered to River Valley Production d/b/a River Valley Relief Cultivation, a five-page letter denying liability under Policy Number ERB-CP-000001232-00. A copy of said letter is attached to this Complaint as Exhibit "C."

**A.     Defendant acknowledges that the working equipment shut down. The equipment never broke down.**

18.     One of the reasons Avant gave for denying the claim, in the letter denying coverage (Exhibit "C") is that the plants were destroyed in consequence of an "Equipment Breakdown," and consequently excluded under the "Equipment Breakdown Coverage" found in AVSH 20 14 01 21, pp. 2-9. The word "breakdown" is not defined in the policy. A dictionary definition of the word "breakdown" defines it as "A breaking that causes a collapse, as of machinery or health." Webster's Second Dictionary, 1954, p. 330. A "shutdown," on the other hand, occurs when "a machine or factory stops working temporarily."

19.     On the first page of Avant's letter (Exhibit "C"), and consistently thereafter, Avant declares that the loss resulted from a *shutdown*. ("The underlying cause of loss involves chillers shutting down" p. 1; "The claim was the result of multiple (sic) occurrences of chiller shutdown events on November 25, 2021… (sic)," p. 1; "Chris Nail… was retained to investigate and determine the cause of the chiller shutdown," p. 2. Finally, and most tellingly, Avant declared "According to our investigation and Chris Nail's expert opinion, the reported loss was the failure of HEP to properly set the chiller with an appropriate temperature setting *rather than breakdown or failure of the equipment itself*," p. 4 (emphasis added.) Any "exclusion" in AVSH 20 14 01 21 that relates to "Equipment breakdown" is not pertinent to this case because there was no breakdown or collapse of equipment, and nothing about the shutdown caused physical injury or damage to the chillers themselves.

### B. The policy covers loss to growing crops.

20. Proceeding further, on p. 1 of the letter, Avant declares "Unfortunately, the coverages available under the policy do not include coverage for crop loss."

21. This is false: Growing plants are *specifically* covered under Policy Form 20 03 02 21, pp. 1-3. The form is labeled "Commercial Excess Property"/"Additional Exclusions and Endorsements"/"Cannabis Personal Property." The endorsement specifically covers "plants" that are in the process of cultivation.

### C. Growing crops are not refrigerated goods.

22. For the third reason to deny Obsidian's duty to pay the loss sustained by River Valley, Avant invoked language that is found in the "Commercial Property Extension Form, Gold Level." The language cited by Avant AVSH 20 07 01 21, on p. 4 of 15 that promises that Obsidian will pay for "Refrigerated Goods Spoilage caused by change of temperature," and will do so at a limit of $25,000.00. That is, on behalf of Obsidian, Avant would acknowledge a debt of $25,000.00, not a total exclusion.

23. The $25,000.00 limit does not apply because the growing plants were not "goods," and were not being "refrigerated." At any given time, Plaintiff will have thousands of plants in the process of becoming "harvestable." After harvest, flowers, buds, and oils can be processed, and sold as "goods." On November 25, 2021, Plaintiff held a number of harvested plants that were drying, before they could be processed, but none of the harvested plants were damaged and destroyed. Plaintiff makes no claim for any loss of "goods."

7

      **D.    Loss did not occur due to climactic changes, but because a third party's negligence caused chillers to shut down.**

24.    Finally, Avant claims that the loss in not covered because it was caused *solely* by "change in temperature," without any outside and prevenient cause contributing to the loss.

25.    Obsidian's policy covers all direct losses its insured experiences during the policy period, subject to two classes of "exclusions." The broadest exclusions relate to 8 separate causes of loss - - earthquakes, nuclear accidents, etc., that constitute risks for which the insurer is not liable, even if a "covered act" (a third party's action) *contributes to* the loss (earth movement, nuclear event). See, generally, Covered Causes of Loss, Policy Form CP 10 30 01 21, pp. 1-3.

26.    Then, there are losses that are not covered if the described condition, *by itself*, causes the loss. CP 10 30 01 21, pp. 3-6. Avant, for Obsidian, states that the policy excludes coverage for "Dampness or dryness *of the atmosphere*," and "Changes in or extremes of *temperature*." The language, commonly used in commercial property policies, excludes losses from climate (atmosphere, temperature) not conditions caused by the act and/or negligence of third parties. In this case, the acts/negligence of Harrison Energy Partners, the installer/calibrator of the chillers, caused them to shut down. In consequence, plants were killed when grow lights remained on, as they were supposed to.

27.    Obsidian is in error by not paying $300,000.00. The Gold Level Coverage extension it cites does not apply to "plants" at all, but to "goods" that are "refrigerated." Damages in this case are to "growing plants," not "goods."

28.    Plaintiff has suffered a compensable $300,000.00 loss. Defendant fails and refuses to pay any loss.

## COUNT ONE: DECLARATORY JUDGMENT

29. The allegations of Paragraphs 1-28 are repeated as if set forth word-for-word herein.

30. Under Arkansas's Declaratory Judgment Act, Plaintiff is entitled to a Declaration stating:

    (a) Plaintiff's loss is not excluded or limited to $25,000.00 on Plaintiff's claim that the growing plants were "refrigerated goods." Defendant wrongly denies liability when it claims that its policy offers no coverage for "growing crops;"

    (b) There is coverage for "growing crops" under the policy, and a party insured by Obsidian may recover a calculable amount of losses to "cannabis plants" should they be damaged or lost during the policy period;

    (c) The loss is covered because the prevenient cause of the loss was a shutdown of chillers that occurred because of a third party's negligent planning, selection and installation of equipment;

    (d) The loss was not the result of a "mechanical breakdown": the equipment itself was entirely undamaged on November 25-26, 2021; and

    (e) Under the statutes, Plaintiff is entitled to a declaration of coverage, with an award of attorney fees under A.C.A. § 23-79-208.

## COUNT TWO: DAMAGES

31. Plaintiff realleges and restates the allegations contained in Paragraphs 1-30.

32. Plaintiff has sustained a covered loss of $300,000.00, which Defendants refuses to pay.

33. Plaintiff is entitled to an award of $300,000.00, plus 12%, plus attorney fees under A.C.A. § 23-79-208.

WHEREFORE, PREMISES CONSIDERED, Plaintiff asks a declaration of coverage, plus fees and costs, and an award of damages for breach of insurance contract, plus pre-judgment interest, 12% penalty, attorney fees and costs, and all other proper relief.

        RESPECTFULLY SUBMITTED,

        **RIVER VALLEY PRODUCTION d/b/a RIVER VALLEY RELIEF CULTIVATION,** *Plaintiff*

By: */s/ Matthew T. Horan*
   Matthew T. Horan, ABA #76050
   SMITH, COHEN & HORAN, PLC
   P.O. Box 10205
   Fort Smith, AR 72917-0205
   Telephone: (479) 782-1001
   Facsimile: (479) 782-1279
   mth.smcrh@mac.com